OPINION OF THE COURT
Phillip R. Rumsey, J.
The defendant Daniel L. Achilles doing business as Dan’s Fuel Service (Achilles) moves for summary judgment to dismiss the eighth and ninth causes of action asserted against him in the complaint.
This is an action for personal injuries allegedly sustained by the plaintiff Daniel J. Lowenthal as a result of exposure to fuel oil on or about March 5, 1993. The oil had leaked from a fuel oil tank connected to a heating system at 1014 East Shore Drive, Ithaca, New York (premises).
Lowenthal was a lessee at the premises which is owned by the defendant James R. Perkins and managed by the defendant Richard W. Gilbert.
When Lowenthal discovered the heat was not functioning on March 4, 1993 and the property manager Gilbert was unavailable, he telephoned Merv Hammond Heating & Plumbing (Hammond) to advise them of the lack of heat.
On March 5, 1993 Lowenthal placed two telephone calls to Achilles, a fuel oil distributor. The first call was made to inquire as to the quantity of fuel and the last date of delivery to the premises; this call was made before an employee of Hammond’s (Art) arrived. The second call was made to advise Achilles that Lowenthal needed fuel as he had been told by Art that the tank was empty. Lowenthal told the person at Achilles that he found it hard to believe so much fuel was used since January, the last date of delivery.
He also stated in his affidavit that when the employee from Achilles arrived to fill the tank, that he, Lowenthal, told him that Hammond had looked at the furnace and fuel tank and "had done something to the tank.” Lowenthal also informed the Achilles’ employee that he had been told there was "a small drip or small leak in the fuel tank and it had been there *924 as long as Art could remember”. Lowenthal says he asked if it was safe to fill the tank and the employee of Achilles told him it was not a problem. The tank was then filled, without any examination, by the employee of Achilles with 150 gallons of oil.
The fuel tank itself is located in the basement of the residence; the delivery was accomplished by connecting a flexible fuel line from Achilles’ delivery tank to an exterior fill pipe located outside of the residence.
Later in the evening of March 5, 1993 Lowenthal learned that all 150 gallons of oil were out of the tank and on the ground.
On March 6, 1993, Hammond and Achilles met Lowenthal at the premises. Hammond and Achilles examined the tank, and no leaks were observed. Achilles thereupon delivered a further quantity of fuel oil to the premises and Hammond’s employee restarted the furnace.
EIGHTH CAUSE OF ACTION
The eighth cause of action alleges that Achilles had a duty to inspect the tank before filling it, and Achilles breached that duty by failing to inspect the tank.
A supplier of residential heating fuel has no duty to check the heating system for leaks before supplying fuel to the residence absent notice to the supplier of a possible defect in the system (Mittendorf v Brooklyn Union Gas Co., 195 AD2d 449 [2d Dept 1993]). Only when the fuel supplier has received actual or constructive notice of a leak in the system does a duty arise to inspect the heating system before making further deliveries of fuel (Lockwood v Berardi, 135 AD2d 881 [3d Dept 1987]).
Although the complaint and the bill of particulars do not allege any notice of a defect, Lowenthal’s affidavit raises questions of fact as to the existence of constructive or actual notice. It is a question of fact whether any of the following should have indicated to Achilles a defect in the fuel tank: the request for oil in March after an earlier delivery in January; Lowenthal’s comments of disbelief (when ordering oil from Achilles) that January’s supply could be depleted so soon; Lowenthal’s statements to Achilles that he was told there was a small leak or drip in the tank, and Hammond had inspected the tank and "done something” to it.
There are questions of fact on whether Achilles had notice *925 of a potential leak in the fuel tank giving rise to a duty to inspect the fuel tank before filling it. The eighth cause of action cannot be summarily dismissed.
NINTH CAUSE OF ACTION
The ninth cause of action alleges that Achilles is strictly liable for Lowenthal’s injuries and damages pursuant to section 181 of the Navigation Law. Navigation Law § 181 (1) states, in pertinent part, "Any person who has discharged petroleum shall be strictly liable, without regard to fault, for all cleanup and removal costs and all direct and indirect damages, no matter by whom sustained, as defined in this section.”
A "discharge” is defined in section 172 of the Navigation Law as follows: "8. 'Discharge’ means any intentional or unintentional action or omission resulting in the releasing, spilling, leaking, pumping, pouring, emitting, emptying or dumping of petroleum into the waters of the state or onto lands from which it might flow or drain into said waters, or into waters outside the jurisdiction of the state when damage may result to the lands, waters or natural resources within the jurisdiction of the state.”
The term "discharger” by statutory design is broad in its embrace. The Legislature recognized that article 12 of the Navigation Law was necessary for the general health, safety, and welfare of the people of this State and mandated that the article be construed liberally to effect its purposes (Navigation Law § 195). The courts have indeed liberally construed the provisions of the Navigation Law (see, State of New York v Montayne, 199 AD2d 674, 675 [3d Dept 1993]).
In identifying a "discharger” under the statute, "no proof is required of a specific wrongful act or omission which directly caused the spill in order to impose liability” (Domermuth Petroleum Equip. & Maintenance Corp. v Herzog & Hopkins, 111 AD2d 957, 958-959 [3d Dept 1985]). In Domermuth the Court found that it was "sufficient * * * that Herzog & Hopkins, as the deliverer of the oil and the repairer of the tank, set in motion the events which resulted in the discharge” (supra, at 959 [citation omitted]).
Whether Achilles "set in motion the events which resulted in the discharge” solely by delivering oil to the tank with or without notice of a defect in the fuel tank is dependent upon questions of fact that cannot be determined on this motion.
*926 Achilles argues that the damages enumerated in section 181 of the Navigation Law are limited to the costs of clean up and removal of the spilled petroleum and property damage resulting from the occurrence of the spill. It contends that the absence of any mention of damages for personal injuries in the statute clearly illustrates the legislative intent not to create such a cause of action.
To support his claim for personal injuries, Lowenthal points to the language of the statute that imposes liability on a discharger or petroleum for "direct or indirect damages” in addition to cleanup and removal costs (Navigation Law § 181 [1], [2]). It is Lowenthal’s position that personal injuries are included in direct or indirect damages. He also asserts that the enumerated recoverable damages listed in section 181 (2) are not all inclusive and by the statute’s language are not limited to those damages listed.
A suit against a discharger initiated by the damaged party is one for damages caused by injury to property and is subject to a three-year Statute of Limitations (Town of Guilderland v Texaco Ref. & Mktg., 159 AD2d 829, 831 [3d Dept 1990]). Following this ruling, the Court in Wheeler v National School Bus Serv. (193 AD2d 998, 999 [3d Dept 1993]) stated "When plaintiff made her motion, this Court had already ruled that a private action did lie under Navigation Law § 181 on behalf of a party injured as the result of an oil discharge [citing Town of Guilderland v Texaco Ref. & Mktg., supra] and we adhere to that decision.”
The question on this part of the motion is not whether the plaintiff has a private right of action against a discharger under the Navigation Law. He clearly has such a right under the statute and the above-cited cases. The focus here is on the subtler point of whether Lowenthal may recover for his alleged personal injuries. Contrary to Lowenthal’s argument, Wheeler (supra) does not speak to this issue, let alone support it.
The 1991 amendments to section 181 of the Navigation Law (L 1991, ch 672) provided, in pertinent part, as follows: "5. Any claim by any injured person for the costs of cleanup and removal and direct and indirect damages based on the strict liability imposed by this section may be brought directly against the person who has discharged the petroleum, provided, however, that damages recoverable by any injured person in such a direct claim based on the strict liability *927 imposed by this section shall be limited to the damages authorized by this section” (emphasis added).
This amendment explicitly recognized the private right of an injured party to directly pursue a civil damagé action (Wheeler v National School Bus Serv., supra). It also just as explicitly limited the damages the injured party could recover to those authorized by section 181. Those enumerated damages, aside from the costs of cleanup and removal of the spilled petroleum, all relate to the cost of restoring or replacing real or personal property or the loss of income, tax revenue and interest on loans arising from the damaged property. While the list is not meant to be all inclusive but illustrative, any claimed damages not listed but covered would necessarily be of a like kind or nature. Personal injuries are not of such a like kind that they would be part of the compensable damages provided for in the statute.
The purposes of article 12 of the Navigation Law, in sum, are to ensure a clean environment and healthy economy for the State, to respond to and effect prompt cleanup of unregulated discharges, and to provide liability for damages sustained as a result of such discharges (Navigation Law § 171). The very objectives of the statute bespeak protection of the public interest and compensation for damages to public and private property.
Lowenthal was a tenant in the property where the oil spill occurred and his claim in this lawsuit is strictly for personal injuries. The remedy for his alleged personal injuries lies elsewhere; it is not cognizable under the strict liability provisions of the Navigation Law.
The ninth cause of action is dismissed.