[649 NYS2d 726]

WEVER PETROLEUM, INC., Respondent, v GORD'S LTD., Appellant. (Action No. 1.)

MARK LECUYER et al., Plaintiffs, v WEVER PETROLEUM, INC., et al., Defendants and Third-Party Plaintiffs-Respondents. GORD'S LTD:, Third-Party Defendant-Appellant. (Action No. 2.) (And Another Related Action and Third-Party Action.)

Third Department, October 31, 1996

---

### APPEARANCES OF COUNSEL

*Carter, Conboy, Case, Blackmore, Napierski & Maloney, P. C.,* Albany *(Joseph T. Johnson* of counsel), for appellant.

*DiFabio, Tommaney & Legnard, P. C.,* Albany *(Michael D. DiFabio* of counsel), for Wever Petroleum, Inc. and another, respondents.

### OPINION OF THE COURT

CARDONA, P. J.

In October 1986, Gord's Ltd. (hereinafter Gord) contracted with Wever Petroleum, Inc. to install three 6,000-gallon underground fuel storage tanks and associated piping on property owned by Wever located in the Village of Stillwater, Saratoga County. Subsequently, leaks developed in the system which allowed fuel to escape and contaminate Wever's property, as well as residential properties of adjacent owners. Wever commenced action No. 1 against Gord seeking damages and costs incurred for the cleanup of contamination and alleging, *inter alia*, that Gord's failure to properly install the tanks and piping constituted a material breach of its contract. Action Nos. 2 and 3 were thereafter commenced by the owners of the neighboring residential properties seeking damages against Wever and its president, Joseph L. Alonzo (hereinafter collectively referred to as Wever), for injuries to their persons and property resulting from the contamination. Wever impleaded Gord in action Nos. 2 and 3 for contribution, indemnification and damages and the three actions were joined by order of Supreme Court.

Thereafter, guided by the Court of Appeals decision in *White v Long* (85 NY2d 564), Wever moved for permission to amend its complaint in action No. 1 and its third-party complaint in action No. 2 to include causes of action in strict liability.[1] Gord cross-moved for partial summary judgment pursuant to CPLR 3212 (e) seeking to limit the damages recoverable under the

---

1. We note that the third-party complaint in action No. 3 already set forth a cause of action in strict liability.

proposed strict liability causes of action "to direct and indirect damages involving the economic loss associated with real and/or personal property". Specifically, Gord asserted that to the extent that any proposed or existing causes of action in the joined actions seek damages for, *inter alia*, personal injuries, such damages are beyond the damages for which a discharger is strictly liable under Navigation Law § 181. Supreme Court granted Wever's request to amend its pleadings but denied Gord's cross motion. This appeal by Gord followed.

It is now beyond cavil that Navigation Law article 12 affords injured individuals the right to pursue a private right of action in strict liability directly against a discharger of petroleum. Specifically, by Laws of 1991 (ch 672, § 2) the Legislature enacted Navigation Law § 181 (5), which provides that: "Any claim by any injured person for the costs of cleanup and removal and direct and indirect damages based on the strict liability imposed by this section may be brought directly against the person who has discharged the petroleum, provided, however, that damages recoverable by any injured person in such a direct claim based on the strict liability imposed by this section shall be limited to the damages authorized by this section."

In the instant case, plaintiffs in action Nos. 2 and 3 brought claims in strict liability pursuant to Navigation Law § 181 (5) against Wever, and Wever, in action No. 1, brought a strict liability claim pursuant to Navigation Law § 181 (5) against Gord. Although there is no claim for personal injuries and related damages brought directly against Gord in any of the direct or third-party actions, Gord's interest in seeking to define the scope of damages allowable pursuant to Navigation Law § 181 (5) apparently stems from concern over its ultimate liability for the claims of personal damages brought against Wever.

In our view, Supreme Court improperly denied Gord's cross motion for summary judgment. Wever maintains that the phrase "direct and indirect damages" in this statutory provision contemplates liability on the part of a discharger for personal injury damages as well as damages related to economic loss involving real or personal property.[2] Gord, on the other hand, asserts that it is apparent from the language of

---

2. Wever's reference to this Court's decisions in *Wheeler v National School Bus Serv.* (193 AD2d 998) and *Nicol v Jenkins Fire Co.* (192 AD2d 164) as supportive of its arguments is not persuasive since the subject of damage limitations was not addressed in these cases.

Navigation Law § 181 and the statute's legislative history that the Legislature intended only economic loss to be recoverable in a direct action instituted pursuant to Navigation Law § 181 (5).

Since Navigation Law § 181 (5) states that the damages recoverable under the section "shall be limited to the damages authorized by this section", it is necessary to examine the statute as a whole to determine the scope of damages contemplated by the Legislature. Navigation Law § 181 (1) states, in part, that: "Any person who has discharged petroleum shall be strictly liable, without regard to fault, for all cleanup and removal costs and all direct and indirect damages, no matter by whom sustained, as defined in this section." Navigation Law § 181 (2), which relates to the liability of the Environmental Protection and Spill Compensation Fund (hereinafter the Fund), states that the Fund shall be strictly liable for all cleanup costs and "all direct and indirect damages * * * *including, but not limited to*" costs related to the repair or replacement of real or personal property or natural resources, or the loss of income, tax revenue or interest on loans arising from the damaged property (emphasis supplied). While the list of damages contained in Navigation Law § 181 (2) is explicitly noninclusive, it is significant that the examples given relate solely to economic damages of a direct or indirect nature without any reference to the subject of damages for personal injuries (*see, Lowenthal v Perkins*, 164 Misc 2d 922, 927). Additionally, although the entire statute is unquestionably concerned with, *inter alia*, health and safety issues (*see*, Navigation Law § 195), it cannot be ignored that the purpose for creating the Fund was to insure a clean environment by promoting the expeditious cleanup of spills (*see*, Navigation Law §§ 170, 171).

Moreover, it is apparent from the language contained in Navigation Law § 181 (1), (2) and (5) that the Legislature intended that the damages recoverable be limited in some fashion. Thus, although Navigation Law § 181 (1) and (2) state that all direct and indirect damages may be claimed, these provisions then add the qualifying phrases "as defined in this section" (Navigation Law § 181 [1]) and "including, but not limited to" (Navigation Law § 181 [2]) when referring to the issue of damages. Additionally, Navigation Law § 181 (5) states that claims against dischargers "shall be limited to the damages authorized by this section".

Furthermore, an examination of the legislative history of Navigation Law § 181 and the 1991 amendments to the statute

which enacted Navigation Law § 181 (5) does not support Wever's contention that the Legislature meant for this provision to be a vehicle by which individuals could pursue damages for personal injuries in addition to economic loss. In fact, the legislative history makes it plain that Navigation Law § 181 (5) was implemented for the purpose of clarifying a jurisdictional split on the issue of whether parties were allowed to bring private actions based on strict liability under the statute (*see generally*, Bill Jacket, L 1991, ch 672).[3] Adoption of subdivision (5) specifically authorizing such actions was intended to alleviate the strain on the Fund of paying out such claims in the first instance by encouraging injured parties to bring their actions directly against the discharger. Of particular interest is language in the legislative history indicating that the new legislation was designed to promote efficiency by allowing claimants to bring their strict liability claims along with common-law causes of action such as negligence or nuisance. Thus, it is apparent from the statute and its history that Navigation Law § 181 (5) was not meant to replace or diminish a claimant's right to recourse under the common law (*see*, Navigation Law § 193). Accordingly, we conclude that Gord's cross motion seeking a prospective limitation of the scope of damages to economic loss should have been granted.[4]

MIKOLL, CREW III, YESAWICH JR. and SPAIN, JJ., concur.

Ordered that the order is modified, on the law, without costs, by reversing so much thereof as denied the cross motion of Gord's Ltd. for summary judgment limiting the damages recoverable under the strict liability causes of action to economic loss; said motion granted; and, as so modified, affirmed.

---

3. Navigation Law § 181 (5) was enacted in direct response to case law holding that a private litigant could not bring a direct claim in strict liability pursuant to Navigation Law § 181 (1) (*see*, Mem of State Comptroller, Bill Jacket, L 1991, ch 672).

4. We note that Wever raises a compelling question as to why an innocent victim of a discharge from a "hazardous undertaking" (Navigation Law § 170) such as fuel storage would be recompensed for property damage regardless of fault of the discharger but would have to prove specific acts of wrongdoing to recover for personal injuries. However, such a question is more properly directed to the Legislature.